Donovan J. Dunnion
Attorney at Law
600 West Broadway, Suite 700
San Diego, CA 92101
(619) 231-8688

Attorney for Defendant,
Vicente Cortes Quiroz

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>VICENTE CORTES QUIROZ,<br><br>Defendant. | Case No. 3:26-cr-00077-AN<br><br>DEFENDANT'S SENTENCING MEMORANDUM<br><br>Date: 08/27/2026<br>Time: 01:00 p.m.<br><br>Honorable Adrienne Nelson |

## I. INTRODUCTION

Defendant Vicente Cortes Quiroz respectfully requests a sentence of probation or, alternatively, time served followed by supervised release. Either sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing under 18 U.S.C. § 3553(a).

Mr. Cortes is 37 years old and has lived in the United States since 2003, when he came to this country as a child with his family. He holds active Deferred Action for Childhood Arrivals (DACA) status and employment authorization through March 6, 2027. He completed high school in Oregon, has maintained a lengthy and consistent employment history, and now owns and operates Sinclairs Energy Solutions, an insulation and drywall business serving Oregon and Washington. The business provides employment to family members and other workers. Mr.

Cortes is the father of a teenage son and has remained actively involved in his life and support.

Over many years, Mr. Cortes assembled a specialized collection of Colt 1911-pattern firearms. The collection included customized, commemorative, historically significant, decorative, and investment-grade pieces. As the PSR notes, Mr. Cortes regarded the collection as an investment and intended most of it as an inheritance for his son. The composition of the collection, the accompanying historical materials, and his communications concerning custom collector components corroborate a genuine collector purpose.

Mr. Cortes pleaded guilty to one count of trafficking in firearms under 18 U.S.C. § 933(a)(2). He accepts responsibility for his offense of conviction, including making false statements in the firearm-purchase applications. The offense is serious, but it did not involve violence, threatened violence, discharge of a firearm, or an identifiable victim.

The principal Guidelines dispute—expressly reserved by the parties for the Court—is whether U.S.S.G. § 2K2.1(b)(2) applies. If it does, the offense level is reduced to level 6, increased by two levels under § 2K2.1(b)(6), and reduced by two levels for acceptance of responsibility under § 3E1.1(a), producing a final total offense level of 6. With Criminal History Category I, the resulting advisory range is 0–6 months in Zone A, making probation a Guidelines-authorized sentence.

Probation denied the reduction based on its disputed § 922(g)(5) premise, the false statements made during acquisition, and two additional firearms it attributed to Mr. Cortes. As discussed below, active DACA undermines Probation's prohibited-person premise; the false statements are part of the admitted offense conduct but not a categorical bar under § 2K2.1(b)(2); and the record does not establish that either disputed firearm was involved in the transactions underlying the offense of conviction, otherwise constituted relevant conduct, or was knowingly possessed by Mr. Cortes. The record likewise does not establish that the Colt .45 recovered in a separate investigation in March 2022 constituted relevant conduct or establishes a non-collection purpose. The Final PSR's parenthetical summary—that the defense believes the reduction applies because the firearms were "part of a collection"—does not accurately capture those distinct objections.

The remaining § 3553(a) considerations reinforce a sentence of community supervision. Mr. Cortes has no prior criminal convictions. He spent approximately three months and 28 days in pretrial detention before his release on December 16, 2025. During the ensuing eight months on pretrial release, he maintained full-time employment and complied with all conditions of pretrial release, with no violations. Mr. Cortes has also permanently forfeited his firearm collection, associated ammunition and accessories, a Chevrolet Camaro, and a Ford F-350—a substantial financial and personal consequence of the conviction.

Mr. Cortes's sustained compliance while in the community provides concrete evidence that he is willing and able to comply with probation or supervised release. The Court should apply § 2K2.1(b)(2) and impose probation. Alternatively, the Court should impose time served followed by supervised release under conditions it deems appropriate. Under the facts of this case, either sentence would be sufficient, but not greater than necessary, to satisfy the purposes of sentencing.

## II.
## THE OFFENSE OF CONVICTION

Mr. Cortes pleaded guilty to Count One of the Information, charging a violation of 18 U.S.C. § 933(a)(2). The Information alleges that, between approximately May 16, 2023, and March 20, 2025, Mr. Cortes received firearms in or otherwise affecting interstate commerce while knowing or having reasonable cause to believe that the receipt would constitute a felony. Final PSR ¶¶ 1, 25–26.

Mr. Cortes accepts responsibility for the conduct underlying his offense of conviction. As reflected in the plea agreement, he admitted making false statements in firearm-purchase applications and that he knew or had reasonable cause to believe that the resulting firearm receipts would constitute felonies. The Court accepted his guilty plea on May 13, 2026. Dkt. 35.

The offense did not involve violence, threatened violence, discharge of a firearm, or a victim. The plea agreement resolved the charged offense under § 933(a)(2), while expressly leaving the applicability of U.S.S.G. § 2K2.1(b)(2) for determination by the Court at sentencing. Final PSR ¶¶ 6–8.

## III.
## THE FIREARM COLLECTION

Mr. Cortes assembled and maintained a specialized personal collection over many years. The collection centered on Colt 1911-pattern firearms and included collector-model .38 Super pistols. The submitted inventory and collector materials document individualized characteristics throughout the collection, including rare and limited-production models, pre-war firearms, custom engraving, specialized grips, gold and silver embellishments, historical documentation, and substantial collector values. Exs. D–E.

The collection contains concrete examples demonstrating its specialized character. The inventory identifies Colt Match .38 pistols individually valued at $30,000 and $35,000, as well as Turnbull, Vaquero, pre-war, hand-engraved, and gold-plated examples. It separately identifies specialized grips incorporating mammoth, ivory, pearl, gold, silver, and carved designs, in some instances valued at several thousand dollars apart from the firearm itself. Ex. D.

The historical materials further document the rarity and provenance of particular firearms. Among them are two rare Colt .38 Super Match pistols—one of 250 and one of 59—associated with the British World War II procurement; a one-of-one .38 Super engraved and inlaid with real gold by Arturo Rojas; matching-serial-number Lee Horton .38 Supers from a production of only 300; an extremely rare four-digit-serial-number .38 Super restored with 24-karat gold and diamond grips; and a first-edition .38 Super reflecting more than 150 hours of engraving work. The materials also identify a four-digit-serial-number example retained in its original bluing and another firearm bearing serial number 17 from a production of 300. Ex. E.

The collection's character is independently corroborated by Mr. Cortes's communications concerning the purchase of specialized components for installation on his .38 Super firearms. Investigative materials document his request to a firearm dealer for a gold-plated slide release, grip safety, and Commander hammer for a .38 Super pistol, followed by his inquiry concerning the price for the components. Ex. F.

Those contemporaneous communications demonstrate his active acquisition of

specialized components to customize firearms in the collection and are consistent with the extensive engraving, precious-metal embellishments, specialized grips, and other individualized features documented throughout the inventory. Exs. D–F.

Mr. Cortes regarded the collection as an investment and intended most of it as an inheritance for his son. Final PSR ¶ 26; Exs. D–E. That stated purpose is consistent with the objective characteristics of the collection and the documentary evidence concerning its acquisition, customization, rarity, and value.

The evidence supporting collector purpose is therefore not limited to Mr. Cortes's characterization of the firearms. It includes the composition of the collection, individualized inventory and valuation records, historically significant and limited-production firearms, extensive customization and decorative craftsmanship, historical materials, and contemporaneous communications concerning specialized components for collector customization. That evidence provides substantial objective corroboration of Mr. Cortes's collector purpose under U.S.S.G. § 2K2.1(b)(2), addressed below.

## IV.
## GUIDELINES CALCULATION

### A. The Agreed Guidelines Provisions

The parties agree that the Guidelines calculation begins with a base offense level of 14 under U.S.S.G. § 2K2.1(a)(6)(B), a six-level increase under § 2K2.1(b)(1)(C), and a two-level increase under § 2K2.1(b)(6). Final PSR ¶¶ 6–8, 28–29, 31. Probation declined to apply § 2K2.1(b)(2) and, after acceptance of responsibility, calculated a total offense level of 19. Final PSR ¶¶ 30, 37–39. With no criminal history points and Criminal History Category I, the resulting advisory imprisonment range is 30 to 37 months. Final PSR ¶¶ 43, 65.

The plea agreement further provides that the Government will recommend an additional three-level downward variance under 18 U.S.C. § 3553(a) based on Mr. Cortes's early notice of intent to plead guilty.

The plea agreement expressly leaves for the Court the applicability of U.S.S.G. § 2K2.1(b)(2). Final PSR ¶¶ 6–8. That provision states that, when its requirements are satisfied, the

Court is to decrease the offense level determined above to level 6. U.S.S.G. § 2K2.1(b)(2).

The Final PSR identifies the applicability of § 2K2.1(b)(2) as unresolved. It further states that, if the Court finds in favor of defense counsel, the total offense level would be 12 and the resulting advisory range would be 10 to 16 months. That alternative calculation is inaccurate.

**B. Application of § 2K2.1(b)(2) Results in a Total Offense Level of 6**

Probation's alternative calculation does not appear to follow the sequence prescribed by the Guidelines. Section 1B1.1(a)(2) directs the Court to determine the base offense level and apply the specific offense characteristics contained in the applicable Chapter Two guideline "in the order listed." U.S.S.G. § 1B1.1(a)(2).

The six-level number-of-firearms adjustment appears in § 2K2.1(b)(1), immediately before § 2K2.1(b)(2). Subsection (b)(2) then directs the Court to decrease the offense level determined above to level 6. Thus, the six-level adjustment under subsection (b)(1)(C) is included in the offense level determined above that subsection (b)(2) reduces to level 6. The six-level adjustment is not reapplied after that reduction.

The proper calculation, if § 2K2.1(b)(2) applies, is therefore:

| **Guideline** | **Calculation** |
|---|---|
| § 2K2.1(a)(6)(B) | 14 |
| § 2K2.1(b)(1)(C) | +6 |
| Subtotal | 20 |
| § 2K2.1(b)(2) | decrease to 6 |
| § 2K2.1(b)(6) | +2 |
| Adjusted offense level | 8 |
| § 3E1.1(a) | −2 |
| **Total offense level** | **6** |

The additional one-level reduction under § 3E1.1(b) does not apply to this alternative calculation because the offense level before application of § 3E1.1(a) would be 8, below the level-16 threshold required by subsection (b).

Accordingly, if the Court determines that § 2K2.1(b)(2) applies, the total offense level is 6. With Criminal History Category I, the resulting advisory imprisonment range is 0 to 6 months in Zone A, and probation is an authorized Guidelines sentence. That advisory calculation precedes consideration of the Government's agreed recommendation of an additional three-level downward variance under 18 U.S.C. § 3553(a) based on Mr. Cortes's early notice of intent to plead guilty.

## V.
## THE COURT SHOULD APPLY U.S.S.G. § 2K2.1(b)(2)

### A. Governing Standard

Section 2K2.1(b)(2) provides that, if the defendant "possessed all ammunition and firearms solely for lawful sporting purposes or collection, and did not unlawfully discharge or otherwise unlawfully use such firearms or ammunition," the Court is to decrease the offense level determined above to level 6. U.S.S.G. § 2K2.1(b)(2). Mr. Cortes relies on the collection prong.

The reference to "all" firearms operates within the scope of the Guidelines offense. Under the Guidelines, the "offense" means "the offense of conviction and all relevant conduct under § 1B1.3." U.S.S.G. § 1B1.1 cmt. n.1(I); *United States v. Parlor*, 2 F.4th 807, 812 (9th Cir. 2021). Relevant conduct includes, where applicable, acts that were part of the same course of conduct or common scheme or plan as the offense of conviction. U.S.S.G. § 1B1.3(a)(2); *Parlor*, 2 F.4th at 812–14.

Whether conduct constitutes the same course of conduct requires consideration of the similarity, regularity, and temporal proximity of the conduct. *United States v. Hahn*, 960 F.2d 903, 910–11 (9th Cir. 1992). Thus, an additional firearm does not become part of the Guidelines offense merely because a defendant may have possessed it; the firearm must be part of the offense of conviction, or its possession or acquisition must otherwise qualify as relevant conduct under § 1B1.3. *See Parlor*, 2 F.4th at 812–14.

Application Note 6 directs that whether firearms were possessed for "lawful sporting

purposes or collection" is determined from the surrounding circumstances. Relevant circumstances include the number and type of firearms, the amount and type of ammunition, the location and circumstances of possession and actual use, the nature of the defendant's criminal history (e.g., prior convictions for offenses involving firearms), and the extent to which possession was restricted by local law. U.S.S.G. § 2K2.1 cmt. n.6.

The Ninth Circuit applies that surrounding-circumstances inquiry in determining whether § 2K2.1(b)(2) applies. In *United States v. Hinostroza*, 297 F.3d 924, 930 (9th Cir. 2002), the court recognized that the location and circumstances in which firearms were possessed are pertinent evidence of whether they were possessed solely for sporting or collection purposes. There, the placement of loaded firearms near the defendant's bed, on his television, in his closet, and in a vehicle bore directly on the credibility of the asserted hunting and collection purpose. *Id.* at 927, 930.

The Guideline separately requires that the firearms or ammunition not have been unlawfully discharged or otherwise unlawfully used. U.S.S.G. § 2K2.1(b)(2). The presence of ammunition alone does not establish a non-collection purpose; the Guideline itself expressly contemplates that both firearms and ammunition may be possessed for collection. Thus, the inquiry here is whether the firearms comprising the offense of conviction and relevant conduct under § 1B1.3 were possessed for collection and were not unlawfully discharged or otherwise unlawfully used by Mr. Cortes.

**B. The Collection Evidence Satisfies the Standard**

The surrounding circumstances identified in Application Note 6 support application of § 2K2.1(b)(2). This is not a case in which the collection characterization rests solely on Mr. Cortes's description of his purpose. The nature and type of the firearms, their individualized characteristics, the circumstances in which the collection was assembled and maintained, Mr. Cortes's contemporaneous communications, and his lack of criminal history provide objective evidence that the firearms comprising the offense were possessed for collection.

The number and type of firearms are consistent with that purpose. As detailed in Section III, the collection was concentrated in Colt 1911-pattern firearms, particularly .38 Super pistols,

rather than being an indiscriminate assortment of firearms. Exs. D–E. The collection included rare and limited-production models, pre-war firearms, matching-serial-number examples, historically significant firearms, and firearms distinguished by provenance or unusually low serial numbers. Some were drawn from production runs numbering only 59, 250, or 300 firearms, and one was identified as a one-of-one example. Ex. E. These characteristics are objective indicia of a specialized collection rather than merely a large accumulation of firearms.

The individualized treatment of the firearms further corroborates collector purpose. The inventory documents extensive engraving, specialized grips, gold and silver embellishments, restoration, and other custom work, together with substantial individual collector values. Exs. D–E. One firearm reflected more than 150 hours of engraving work; another incorporated 24-karat gold and diamond grips. Ex. E. The inventory separately valued particular grips and other specialized features, further demonstrating attention to the individual characteristics and value of particular pieces rather than merely their utility as firearms. Ex. D.

Mr. Cortes's contemporaneous conduct is consistent with the physical and documentary evidence. His communications concerning a gold-plated slide release, grip safety, and Commander hammer for a .38 Super demonstrate his efforts to obtain specialized components for collector customization of firearms of the same type that predominated in the collection. Ex. F. That evidence predates arrest and independently corroborates the collector activity reflected in the inventory and historical materials.

The intended disposition of the collection points in the same direction. Mr. Cortes regarded the firearms as an investment and intended most of the collection as an inheritance for his son. Final PSR ¶ 26; Exs. D–E. Those purposes are consistent with retaining firearms because of their rarity, provenance, craftsmanship, customization, and value. They are also consistent with the substantial time and expense reflected in the collection itself.

The remaining circumstances identified in Application Note 6 do not undermine that evidence. Mr. Cortes has no prior criminal convictions and no criminal history points. Final PSR ¶ 43. There is no allegation that any firearm comprising the documented collection was discharged, used to threaten another person, or used in an act of violence.

Nor does the offense of conviction itself establish a non-collection purpose: the admitted false statements concern the manner in which the firearms were acquired, while § 2K2.1(b)(2) separately asks the purpose for which the firearms were possessed and whether they were unlawfully discharged or otherwise unlawfully used. The legal significance of the acquisition conduct is addressed separately below.

Taken together, the circumstances provide substantial objective corroboration of Mr. Cortes's stated collector purpose. The specialized concentration of the collection, rarity and provenance of individual firearms, extensive customization and decorative craftsmanship, documented values, contemporaneous acquisition of collector components, investment purpose, intended inheritance, and absence of prior criminal history all point in the same direction.

Under the surrounding-circumstances inquiry required by Application Note 6, the firearms comprising the offense satisfy the collection-purpose requirement of § 2K2.1(b)(2).

**C. False Statements During Acquisition Do Not Categorically Bar the Reduction**

Probation also relies on the false statements Mr. Cortes made in connection with acquiring the firearms. Final PSR ¶ 30. Those statements are part of the admitted offense conduct and may be considered among the surrounding circumstances. They do not, however, categorically preclude application of § 2K2.1(b)(2). The Guideline asks whether the firearms were possessed solely for a qualifying purpose and whether they were unlawfully discharged or otherwise unlawfully used. Neither § 2K2.1(b)(2) nor Application Note 6 establishes a separate rule making a false statement during acquisition an automatic bar to the reduction.

*United States v. Shell*, 972 F.2d 548 (5th Cir. 1992), directly supports that distinction. Shell pleaded guilty to making a false statement in acquiring a firearm under § 922(a)(6) and to unlawful receipt of a firearm by a convicted felon. The Fifth Circuit held that the § 2K2.1 reduction was nevertheless potentially available to a defendant convicted of the false-statement offense. *Id.* at 551. Although the court affirmed denial of the reduction in *Shell*, it did so based on the totality of the circumstances—including loaded firearms in the home, the type of handgun, criminal history, and the false acquisition statements—not because the false statement categorically made the defendant ineligible. *Id.* at 549, 552.

Mr. Cortes does not dispute the false statements underlying his § 933(a)(2) conviction. But those statements do not answer the separate question presented by § 2K2.1(b)(2): for what purpose were the firearms possessed? The acquisition conduct may properly be considered as part of the surrounding circumstances, but it does not displace the Guideline's required inquiry into the purpose of possession. Here, the objective evidence discussed in Sections III and V.B demonstrates that the firearms were maintained as a specialized collection characterized by rarity, provenance, customization, craftsmanship, investment value, and intended inheritance.

Accordingly, the admitted false statements do not independently defeat § 2K2.1(b)(2). They are one circumstance for the Court to consider together with the substantially more specific evidence concerning the nature, characteristics, customization, value, and intended disposition of the collection.

**D. Active DACA Undermines Probation's § 922(g)(5) Premise**

Probation declined the reduction in part because it concluded that Mr. Cortes's immigration status made possession of the collection unlawful under 18 U.S.C. § 922(g)(5). Final PSR ¶ 30. Even assuming § 922(g)(5) restricted Mr. Cortes's possession, Application Note 6 treats the extent to which possession was restricted by law as one of the surrounding circumstances relevant to determining whether the firearms were possessed for a qualifying purpose, not as an independent categorical bar to § 2K2.1(b)(2).

Section 922(g)(5)(A), however, does not refer to formal immigration status. It applies to an alien who "is illegally or unlawfully in the United States." 18 U.S.C. § 922(g)(5)(A). The distinction between formal immigration status and federally authorized presence is therefore material to Probation's premise.

Mr. Cortes did not receive DACA merely by remaining in the United States without governmental action. He affirmatively applied to DHS and underwent an individualized federal adjudication of his eligibility, including verification of his identity, biometric and background screening, criminal-history review, and consideration of applicable public-safety and national-security criteria. Following that review, DHS granted Mr. Cortes permission to remain in the United States and employment authorization for the grant period. He therefore was federally

authorized to be present in the United States and was not considered unlawfully present during that period. *See* 8 C.F.R. § 236.21(c)(3)–(4); *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1073–74 (9th Cir. 2014).

Mr. Cortes held active DACA and a valid Employment Authorization Document during the relevant period. Probation verified his employment-authorization card, and the Government's April 29, 2025 immigration-check records further reflect that his DACA and employment authorization were valid through March 6, 2027. Final PSR ¶ 53; Ex. B.

The Ninth Circuit recognizes the distinction between formal immigration status and federally authorized presence. In *Arizona Dream Act Coalition*, the court explained that DACA recipients are authorized to be present in the United States because the federal government has allowed them to remain, pledged not to remove them during the designated period, and authorized them to work. 757 F.3d at 1073–74. The Ninth Circuit subsequently reaffirmed that DACA recipients lack formal immigration status but are permitted by the federal government to live and work in the country during the authorized period. *Ariz. Dream Act Coal. v. Brewer*, 855 F.3d 957, 972 & n.8 (9th Cir. 2017).

That distinction is directly relevant under § 922(g)(5)(A). In *United States v. Venegas-Vasquez*, 376 F. Supp. 3d 1094 (D. Or. 2019), the District of Oregon addressed § 922(g)(5)(A) in the context of a DACA recipient. The court rejected the premise that the absence of formal immigration status necessarily meant that the defendant was illegally or unlawfully in the United States. *Id.* at 1100–05. Recognizing the distinction between immigration status and authorized presence, the court concluded that the statutory phrase illegally or unlawfully in the United States was grievously ambiguous as applied and dismissed the § 922(g)(5)(A) charge under the rule of lenity. *Id.* at 1103–05.

Mr. Cortes's active DACA grant prevents the absence of formal immigration status from serving as a categorical substitute for establishing that his possession of the documented collection was unlawful under § 922(g)(5)(A). DHS had affirmatively reviewed Mr. Cortes, granted him permission to remain in the United States, and authorized his presence during the relevant period. Published authority from this District rejects the premise that a DACA recipient

is necessarily illegally or unlawfully in the United States merely because DACA does not confer formal immigration status. Probation's § 922(g)(5) rationale therefore does not independently establish that the documented collection was unlawfully possessed or bar application of § 2K2.1(b)(2).

**E. The Additional Firearms Do Not Defeat the Reduction**

The Final PSR identifies Mr. Cortes as the purchaser of a Colt .45-caliber 1911 pistol that was later recovered during a separate law-enforcement investigation on March 16, 2022. Final PSR ¶ 17. Probation separately relied on two additional firearms—the Colt Mark IV, serial number RR00743, and the Nighthawk Custom 9mm, serial number NCP23869—in declining to apply § 2K2.1(b)(2). Final PSR ¶ 30. As discussed below, the record does not establish that any of these firearms provides a basis to deny the reduction.

The Colt .45 recovery predates the offense of conviction and is not shown to constitute relevant conduct or to establish a non-collection purpose. As to RR00743 and NCP23869, the record neither establishes the necessary connection to the Guidelines offense nor independently establishes Mr. Cortes's knowing possession.

**1. The Colt .45 Recovery Does Not Establish Relevant Conduct or a Non-Collection Purpose**

The Final PSR identifies Mr. Cortes as the purchaser of a Colt .45-caliber 1911 pistol, later recovered during a separate law-enforcement investigation on March 16, 2022. Final PSR ¶ 17. The recovery occurred approximately fourteen months before the May 16, 2023 commencement of the offense of conviction. Final PSR ¶¶ 1, 17.

Mr. Cortes was in the firearm's chain of registered owners, but it had been re-registered to another person years before its recovery—a circumstance he disclosed to both Probation and the investigating agent. The PSR does not identify the firearm as one acquired in the transactions underlying the offense of conviction, explain the circumstances under which the firearm came to be recovered in the separate investigation, or identify any conduct connecting Mr. Cortes to that investigation.

The later recovery of a firearm, without evidence establishing its connection to the

offense of conviction or the same course of conduct, does not establish relevant conduct under § 1B1.3. The record does not establish that the firearm was acquired through a false-statement transaction or otherwise identify repeated or similar conduct connecting it to the offense of conviction. Nor does the recovery establish that Mr. Cortes possessed the firearm for a purpose other than collection or that he unlawfully discharged or otherwise unlawfully used it. The recovery therefore does not undermine the documented collector purpose of the firearms comprising the Guidelines offense or supply a basis to deny § 2K2.1(b)(2).

**2. The Two Firearms Have Not Been Established as Part of the Offense of Conviction or Relevant Conduct**

As explained in Section V.A, the Guidelines offense includes only the offense of conviction and conduct qualifying as relevant conduct under § 1B1.3. Relevant conduct must be shown through specific similarity, regularity, and temporal proximity; it is not enough that the alleged additional conduct falls within the same broad category of offense. *United States v. Hahn*, 960 F.2d 903, 910–11 (9th Cir. 1992).

Here, the PSR does not identify either disputed firearm as involved in a Count One transaction or otherwise establish the requisite connection. It identifies no dealer, Form 4473, acquisition date, false citizenship response, or other evidence tying RR00743 or NCP23869 to Mr. Cortes's § 933(a)(2) receipt transactions. Nor does it identify repeated conduct involving either firearm that could demonstrate regularity, or an acquisition or possession date that permits a temporal-proximity analysis. The fact that each object is a firearm supplies only a broad category, not the specific connection § 1B1.3 requires.

The Final PSR therefore must provide some independent basis for treating the possession or acquisition of each disputed firearm as part of the same course of conduct or common scheme or plan as the transactions underlying the offense of conviction. Neither recovery location supplies that connection.

**3. The Record Independently Does Not Establish Knowing Possession by Mr. Cortes**

There is a second and independent problem. Even if either disputed firearm could otherwise qualify as relevant conduct, the record must establish that Mr. Cortes knowingly

possessed it. Constructive possession requires proof that the defendant knew of the firearm and had the power to exercise dominion and control over it; proximity, presence, or association alone does not suffice. *United States v. Behanna*, 814 F.2d 1318, 1320–21 (9th Cir. 1987); *see also United States v. Nevils*, 598 F.3d 1158, 1168–70 (9th Cir. 2010) (en banc).

The record identifies RR00743 as a loaded Colt Mark IV .380 recovered from the rear pocket of the front passenger seat of a vehicle in which Mr. Cortes was the front passenger and Adult Witness 1 was driving. Final PSR ¶ 21. The PSR does not identify the vehicle's owner, and the forfeiture record does not identify it as either vehicle forfeited by Mr. Cortes, although the forfeiture proceedings encompassed other vehicles connected to him. It does not identify a dealer transaction, Form 4473, acquisition date, false citizenship response, or other evidence tying RR00743 to a purchase by Mr. Cortes or to the transactions underlying Count One.

The firearm's location near Mr. Cortes may establish accessibility, but accessibility or proximity alone does not establish knowing possession or dominion and control. *See Behanna*, 814 F.2d at 1320–21. The recovery location, standing alone, does not establish that Mr. Cortes knowingly possessed the firearm or that it constituted relevant conduct.

The record identifies NCP23869 as a loaded Nighthawk Custom 9mm recovered from a nightstand drawer in a bedroom the PSR identifies as Mr. Cortes's. Final PSR ¶ 22. The PSR identifies the bedroom as Mr. Cortes's, but also reports that he lived with his partner. It does not identify who used, controlled, or had access to the nightstand or drawer, or establish that Mr. Cortes had exclusive use of the bedroom rather than sharing it with his partner. Constructive possession requires proof that the defendant knew of the firearm and had the power to exercise dominion and control over it; proximity or presence alone does not suffice. Behanna, 814 F.2d at 1320–21; *Nevils*, 598 F.3d at 1168–70.

The PSR identifies no fingerprints, statements, dealer records, Form 4473, acquisition date, false citizenship response, or other evidence tying NCP23869 to Mr. Cortes's acquisition of the firearm or to the transactions underlying Count One. The recovery location therefore does not establish the required relevant-conduct connection or, without more, establish knowing possession for purposes of using the firearm to defeat § 2K2.1(b)(2).

The two disputed firearms therefore do not defeat the reduction merely because they appear in the investigative record. Probation must establish the necessary connection between each firearm and the Guidelines offense and, independently, knowing possession by Mr. Cortes. Absent those predicates, neither firearm supplies a basis for disregarding the documented collector purpose of the firearms comprising the offense or denying § 2K2.1(b)(2).

## VI.
## THE § 3553(a) FACTORS SUPPORT PROBATION OR, ALTERNATIVELY, TIME SERVED

### A. Mr. Cortes's History, Character, and Responsibilities

The history and characteristics of Mr. Cortes present a substantially different picture from the offense conduct standing alone. Mr. Cortes came to the United States as a child, attended school in Oregon, and has spent virtually his entire adult life working and supporting himself and his family. He has no prior criminal convictions and no criminal history points. Final PSR ¶¶ 41–43, 51, 61. His history before this case is one of sustained employment, entrepreneurship, family responsibility, and substantial ties to the community.

Mr. Cortes developed a career in the construction industry. Final PSR ¶ 62. In 2016, he founded Sinclairs Energy Solutions LLC and built the company into a substantial operating business. Exs. G, H. The business records corroborate that history. The 2023 and 2024 corporate tax materials identify Mr. Cortes as the company's sole shareholder, and the 2024 return reflects gross receipts exceeding $2 million. Ex. H. The significance of that business extends beyond Mr. Cortes personally. It provides employment to others and represents years of work developing relationships with contractors, customers, and employees.

The character letters provide firsthand confirmation of that history. They come from individuals who have known Mr. Cortes personally and professionally for many years, including contractors and others who have worked alongside him. Ex. G. Andy Stevens, owner of Premier Custom Homes, has known and worked with Mr. Cortes and his family for approximately ten years and describes him as honest, hardworking, dependable, professional, and dedicated to his family. He also describes Mr. Cortes as a reliable subcontractor who built a reputable

construction business and helped family members establish businesses of their own. Ex. G.

Forrest Healey similarly describes watching Mr. Cortes progress from an employee to a business owner who learned bidding, payroll, bookkeeping, scheduling, and crew management and ultimately built a company employing approximately four to ten workers depending upon the season. He further describes the trust placed in Mr. Cortes by high-end builders with million-dollar-plus projects. Roberto Cortes provides a complementary family perspective, describing Mr. Cortes not only as his uncle but as a mentor who has guided him personally and in the drywall business. Ex. G. These observations are consistent with the objective business records submitted as Exhibit H.

Mr. Cortes's responsibilities extend beyond his business. He is the father of a teenage son and has made significant decisions in his life to remain present for him. Final PSR ¶ 54; Ex. G. Mr. Healey recounts that Mr. Cortes had an opportunity to relocate to Texas but chose to remain in Oregon because his son was still young and he wanted to remain close to him. Ex. G. Ruby Rodriguez Alejandro likewise describes Mr. Cortes as the family's breadwinner and a central source of support for both his family and his employees, while emphasizing the importance of his continued presence in his son's life. Ex. G.

Since his release on December 16, 2025, Mr. Cortes has returned to full-time operation of Sinclairs Energy Solutions and has complied with the conditions of pretrial release without a violation. Final PSR ¶ 15. That sustained compliance provides concrete confirmation that Mr. Cortes can be supervised safely and responsibly in the community.

Mr. Cortes's offense is serious, and his acceptance of responsibility for it does not depend upon minimizing that conduct. But § 3553(a)(1) requires the Court to consider the defendant as a whole, including his "history and characteristics." 18 U.S.C. § 3553(a)(1). Mr. Cortes comes before the Court with no prior convictions, a lengthy and productive employment history, a business he built over many years that provides employment to others, longstanding professional relationships, substantial family responsibilities, and a demonstrated record of compliance since his release. Those characteristics are relevant both to the sentence necessary to punish the present

offense and to whether additional incarceration is necessary to accomplish the purposes of sentencing.

**B. The Nature and Circumstances of the Offense**

The nature and circumstances of the offense warrant meaningful punishment, but they also distinguish this case from firearm offenses involving violence, intimidation, discharge, or a victim. Mr. Cortes pleaded guilty to violating 18 U.S.C. § 933(a)(2) and has accepted responsibility for making false statements in connection with firearm purchases. Final PSR ¶¶ 25–26. The offense did not involve violence, threatened violence, discharge of a firearm, or a victim.

The circumstances surrounding the firearms are also relevant under § 3553(a)(1). As discussed above, the firearms comprising the offense were part of a longstanding and specialized collection centered on Colt 1911-pattern firearms, including historically significant, limited-production, engraved, and customized firearms. Exs. D–F. The documentary evidence reflects substantial attention to rarity, provenance, craftsmanship, customization, and collector value. Mr. Cortes regarded the collection as an investment and intended most of it as an inheritance for his son. Final PSR ¶ 26; Exs. D–E.

Nothing about the collector purpose excuses the false statements Mr. Cortes made to acquire firearms, and he does not offer it for that purpose. It does, however, bear directly on the nature and circumstances of the offense the Court must consider under § 3553(a)(1). The record does not establish that the documented collection was assembled for violent, protective, or operational criminal use, that Mr. Cortes used any firearm comprising the collection to threaten or injure another person, or that the offense resulted in physical harm to anyone.

The Court therefore can impose a sentence that recognizes the seriousness of Mr. Cortes's admitted acquisition conduct without treating this case as though it involved the aggravating circumstances present in firearm offenses involving violence, threatened violence, or criminal use of the weapons. Considered together with Mr. Cortes's acceptance of responsibility and the other § 3553(a) factors, the nature and circumstances of this offense support a sentence that does not require additional incarceration to provide just punishment.

### C. Mr. Cortes's Conduct Since Release Demonstrates That Additional Incarceration Is Unnecessary

Mr. Cortes's conduct since his release provides concrete evidence that a sentence of community supervision can satisfy the purposes of sentencing. He was released from custody on December 16, 2025, subject to federal pretrial supervision. Since then, he has returned to full-time operation of Sinclairs Energy Solutions, maintained employment, and complied with all conditions of pretrial release, with no reported violations. Final PSR ¶ 15.

That record is especially significant because it is not a prediction. For more than eight months, Mr. Cortes has lived and worked in the community under federal supervision without a reported violation. He has remained accountable to Pretrial Services while operating his business, supporting his son, and meeting his other family and employment responsibilities. Final PSR ¶¶ 15, 54, 62.

The post-release record demonstrates that Mr. Cortes is willing and able to comply with court-imposed conditions. It also demonstrates that additional incarceration is not necessary to protect the public. A sentence of probation, or alternatively time served followed by supervised release, would preserve continued accountability while allowing Mr. Cortes to maintain the employment, family, and community ties that have supported his compliance.

### D. The Forfeiture Has Already Imposed a Substantial Punitive Consequence

Mr. Cortes has already suffered a substantial and permanent consequence from this case. The Court entered a Preliminary Order of Forfeiture and Final Order of Forfeiture as to Mr. Cortes on August 14, 2026. The forfeiture encompasses the firearms collection, a 2019 Chevrolet Camaro, a 2020 Ford F-350, and other associated property. Dkt. 40; see also Dkt. 38.

The loss of the collection is not merely the loss of generic property. As the inventory and collector materials demonstrate, the collection included rare, historically documented, customized, engraved, and high-value firearms, along with specialized grips and other collector components. Exs. D–F.

The inventory identifies individual firearms valued from several thousand dollars to substantially more, including a Colt .38 Aztec valued at $140,000, with additional separately

valued collector features. Ex. D. Mr. Cortes regarded the collection as an investment and intended most of it as an inheritance for his son. Final PSR ¶ 26; Exs. D–E.

The forfeiture also includes two vehicles registered to Mr. Cortes's business: a 2020 Ford F-350 and a 2019 Chevrolet Camaro, which was driven primarily by his wife. The permanent loss of the valuable collection and the two vehicles imposes substantial financial and personal consequences extending beyond the firearms themselves. Those consequences are properly considered in assessing the need for additional incarceration to provide just punishment and adequate deterrence.

The permanent forfeiture does not excuse the offense. It does, however, materially bear on the parsimony inquiry. When combined with the approximately three months and 28 days Mr. Cortes spent in pretrial detention, his sustained compliance under federal supervision, and the continuing consequences of conviction, the forfeiture supports a sentence of probation or, alternatively, time served followed by supervised release.

**E. The Purposes of Sentencing Do Not Require Additional Incarceration**

The sentence imposed must be sufficient, but not greater than necessary, to comply with the purposes of sentencing. 18 U.S.C. § 3553(a). Considered as a whole, the circumstances of this case do not require additional incarceration to provide just punishment, promote respect for the law, afford adequate deterrence, or protect the public.

Mr. Cortes has accepted responsibility for his offense and pleaded guilty. He has no prior criminal convictions or criminal history points. Final PSR ¶¶ 25–26, 43. The offense did not involve violence, threatened violence, discharge of a firearm, or a victim. Mr. Cortes nevertheless spent approximately three months and 28 days in pretrial detention and has permanently forfeited a valuable firearm collection, two vehicles, and other property. Dkts. 38, 40; Exs. D–F. Those consequences provide substantial punishment and deterrence independent of any additional term of imprisonment.

Mr. Cortes's history and conduct also demonstrate that additional incarceration is unnecessary to protect the public. Apart from the conduct underlying this case, Mr. Cortes has led a law-abiding and productive life, with no prior criminal convictions, sustained employment,

the creation of a substantial operating business, and meaningful contributions to his family and community. Final PSR ¶¶ 43, 54, 62; Exs. G–H. His conduct since release confirms that history. For more than eight months, he has complied with federal supervision without a violation while operating his business, supporting his son, and fulfilling his family and employment responsibilities. Final PSR ¶¶ 15, 54, 62. Mr. Cortes has demonstrated both the ability and willingness to comply with court-imposed conditions and to live productively and responsibly in the community. Nothing in his criminal history or post-release conduct indicates that additional incarceration is necessary to protect the public.

Additional imprisonment would also impose consequences extending beyond Mr. Cortes. Sinclairs Energy Solutions is an operating business that he built over many years and that provides employment to others. Final PSR ¶ 62; Exs. G–H. His son and family depend upon his continued presence and support, and the character letters describe longstanding professional and personal relationships reflecting responsibilities to employees, family members, and others in the community. Ex. G. These considerations do not eliminate the need for punishment, but they bear on whether further incarceration would accomplish a sentencing purpose sufficient to justify its additional consequences.

A sentence of probation would continue to impose court supervision and accountability while permitting Mr. Cortes to maintain the productive conduct he has demonstrated since release. Alternatively, a sentence of time served followed by supervised release would recognize the incarceration he has already served while preserving continued federal oversight.

In light of the nature of the offense, Mr. Cortes's lack of criminal history, acceptance of responsibility, substantial forfeiture, period of pretrial detention, demonstrated compliance on release, employment, and family responsibilities, either disposition would satisfy the purposes of § 3553(a) without imposing punishment greater than necessary.

/ / /

/ / /

/ / /

## VII.
## SENTENCING REQUEST

For the reasons set forth above, the Court should apply U.S.S.G. § 2K2.1(b)(2) and impose a sentence of probation. The documented firearms were maintained as a specialized collection, and, apart from the false statements made in connection with their acquisition, the record does not establish that the documented collection was possessed or used for an unlawful purpose. The offense involved no violence, threatened violence, discharge of a firearm, or victim, and Mr. Cortes has accepted responsibility for the false statements underlying his conviction.

The § 3553(a) factors independently support a sentence that does not require additional incarceration. Mr. Cortes has no prior criminal convictions or criminal history points, spent approximately three months and 28 days in pretrial detention, permanently forfeited a valuable firearm collection and substantial additional property, and has complied with every condition of federal supervision for more than eight months following his release. During that period, he has continued operating his business, employing others, supporting his son, and fulfilling his family and community responsibilities.

Accordingly, Mr. Cortes respectfully requests that the Court impose a sentence of probation. Alternatively, if the Court determines that a custodial sentence is appropriate, Mr. Cortes requests a sentence of time served followed by supervised release. Either disposition would recognize the seriousness of the offense, provide just punishment and adequate deterrence, protect the public, and impose a sentence sufficient, but not greater than necessary, to accomplish the purposes of sentencing under 18 U.S.C. § 3553(a).

Respectfully Submitted,

Dated: 8/19/2026

s/Donovan J Dunnion .
dunnionlawoffice@gmail.com

CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2026, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to the following:

ARIN HEINZ arin.heinz@usdoj.gov

*s/Donovan J. Dunnion*____
DONOVAN J. DUNNION
Attorney for Defendant
Vicente Cortes Quiroz